IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILFRED McCLENDON, B59999, </br></br> Plaintiff, </br></br> vs. </br></br> SHEILA D. LEWIS, </br> MICHAEL R. CONAT, </br> DUSTIN SLOVER, </br> JAMES HANSON, </br> JUSTIN ECKELBERRY, </br> JOSH SLUNAKER, </br> ETHAN MARSHALL, </br> DEE DEE BROOKHART, </br> ROBERT REID, </br> AMBER ELLIOTT, </br> CODEY PIPER, </br> DEENA K. SEED, </br></br> Defendants. | Case No. 21-cv-313-DWD |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Wilfred McClendon, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Vienna Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 concerning events that occurred at Lawrence Correctional Center (Lawrence). (Doc. 17). Upon initial review of the Amended Complaint, the Court identified seven claims against the named defendants. (Doc. 27). Defendants Brookhart, Eckelberry, Elliott, Hanson, Lewis, Marshall, Piper, Reid, Slover and Slunaker filed a Motion for Summary Judgment on the issue of exhaustion of administrative remedies

(Doc. 42)[1], and Defendant Seed filed a separate Motion on the same issue (Doc. 56). Plaintiff was notified of both motions (Docs. 44, 58), but he failed to respond. The Court now finds it appropriate to grant both motions because the Defendants have met their burden to demonstrate that Plaintiff failed to exhaust his administrative remedies as to all claims presented in this lawsuit.

## BACKGROUND

Plaintiff alleged that on March 18, 2019, he had a cup of ice with him when he attended medication line to get his medications. Defendant Lewis allegedly tried to snatch the cup, at which point he reflexively moved his hand out of the way. He alleges Lewis ordered him to cuff-up, and the Lewis and Conat conspired to 'trump up' disciplinary charges against him for an alleged assault related to the interaction. Later the same day, Defendants Reid, Conat, Slover, Hanson, Eckelberry, Marshall, and Slunaker escorted him to segregation. During the escort Reid, Conat and Slover tightened the handcuffs, slammed him to the ground, and then pulled him off of the ground by the cuffs. He alleges Hanson, Eckelberry, Marshall and Slunaker failed to protect him or to intervene in this assault. Upon arrival at segregation, Conat told Slunaker to pepper spray him, and Slunaker complied. His hands were also pulled thru the chuck hole and

---

[1] Defense counsel technically did not name Defendant Conat as a party seeking summary judgment in the caption of the motion or the signature block. It is not clear why this occurred. Defendant Conat was the only defendant against whom claims proceeded after initial review of the original complaint. (Docs. 1, 12). He was served and counsel appeared on his behalf. (Docs. 14, 18). After review of the amended complaint, Conat filed an answer (Doc. 29). Subsequently, other defendants were served (Doc. 30), Conat's counsel entered an appearance on their behalf (Doc. 31), and an answer was filed (Doc. 34). Given that it appears to be an error Conat was not listed in the caption and given that substantive arguments were made on his behalf that demonstrate administrative remedies were not exhausted, the Court considered the motion as if it was also filed on Conat's behalf.

twisted around, which produced visible bleeding. All the while, Slover, Hanson, Eckelberry and Marshall stood by and did nothing.

Plaintiff told officers Phillip and Thomas (non-parties) that he needed his asthma pump because he could not breath. Twenty minutes after his request, Defendant Seed brought his asthma pump and a liquid solution to clean his face and eyes, but she did not treat injuries to his wrists or the rest of his body. He alleges he should not have allowed him to stay in segregation with open wounds.

Plaintiff alleges that Defendants Lewis and Conat gave him disciplinary tickets about the incident, and he had a hearing, but he was not allowed to present witnesses or to otherwise represent himself. He was found guilty.

Plaintiff was transferred to Pinckneyville and to the Cook County Department of Corrections in August of 2019, but he was returned to Lawrence in February of 2020. Upon return, he alleges Defendant Piper wrote him a false disciplinary ticket to have him moved to segregation, and Defendant Brookhart helped with this move as a form of retaliation. He further alleges in August and September of 2020 that Defendant Elliott fabricated new discipline to keep him in segregation, and in November of 2020 Brookhart had him placed in administrative detention without following proper procedures. At the time of filing the amended complaint, Plaintiff was still in administrative detention.

Based on the allegations in the Amended Complaint, which are more fully recounted in the Order of Initial Review (Doc. 27), the Court designated seven claims:

Claim 1:   Eighth Amendment claim against Conat, Reid, Slover, and Slunaker for excessive force;

Claim 2:   Eighth Amendment claim against Conat and Slunaker for deliberate indifference to a serious medical condition in ordering him sprayed with mace;

Claim 3:   Fourteenth Amendment Due Process claim against Defendants Conat and Lewis for filing false disciplinary charges that resulted in segregation, C-grade, visiting restrictions and a disciplinary transfer;

Claim 4:   Eighth Amendment failure to protect or intervene by Slover, Hanson, Eckelberry, and Marshall;

Claim 5:   Eighth Amendment deliberate indifference to medical needs against Defendant Seed;

Claim 6:   Fourteenth Amendment Due Process claim against Defendants Piper and Elliott for fabricated investigative tickets; and,

Claim 7:   First Amendment retaliation or Fourteenth Amendment Due Process claim against Brookhart for keeping Plaintiff in segregation without cause.

(Doc. 27 at 6-7).

The Defendants have identified just one grievance that is potentially relevant to the claims presented in this lawsuit—a grievance drafted on May 23, 2019. (Doc. 43-1 at 11-12; Doc. 57-1 at 24-25).

### FINDINGS OF FACT

In the May 23, 2019, grievance, Plaintiff wrote,

On above date 3-18-19 I was housed in seven house on B Wing Low 17 at time of medline called. The C/O who work seven house B wing open my cell to let me out to go get my med and then I asked him could I get some ice. Sgt. Lewis was out there in foyer when I went to get ice and then my med. She said to me that I wasn't out there for ice I then told her I asked my C/O can I get some ice, I started to put the water in my cup and Sgt. Lewis started talking about the ice again and then she try to take my cup out my hand. Then I pulled my cup back and told her she can not touch

> my cup. In our ruled book it say you can not touch me or take anything out of my hand or inmates hand. Then I told her she was wrong for trying to take my cup out my hand. So then she ask me for my I.D. and I told her I didn't have it. She said cuff-up then I told her what for I didn't do anything. I said I would like to speak with Lt. then she said go back on the wing. I went back on the wing. After that the Lt. Conat show up with a lot of C/O's. Then I try to explain to him about situation with Sgt. Lewis behave right then and there he had his mind made up. I was cuff by the C/O and they started take me off the wing then the Lt. Conat told the C/O I got him we started walk out the door and the Lt. Conat started pulling on me and ruff with me. Then started squeezed down hard on handcuff when we got outside. Lt. Conat shove me to ground then he started drag me I told him this not how you treat human being. So he stated stop resisting and I was not resisting. We got back to seg he told C/O to get lead chain. Lt. Conat put me in shower and then he put the lead chain throughout shower chuckhole. So he told me to put my hand through shower chuckhole which I couldn't do that then he stated to C/O's if I don't to spray me. Right there, I told him I have asthma that they couldn't spray then Lt. Conat told C/O to spray and then all the C/O's started pulling the lead chain in real hard and my arm went through the shower door scratch up my elbow and my back but door real hard too. Then Lt. Conat started squeezed the handcuff tighter and tighter he was pulling down on my arm trying to break it my wrist too which was unnecessary excessive force. After they spray me I couldn't breathe then I told Lt. Phillipe I need my asthma pump. She called the nurse after 20 minute went by the nurse came she put solution in my eyes and gave me my asthma pump. The Lt. Phillipe put me in cell I asked her could the nurse clean my cuts and bandage them up. After that the nurse didn't come back and shift has change 11:00 to 7:00pm and I then told them what happen and nothing was done.

(Doc. 43-1 at 11-12). Plaintiff designated the grievance as an emergency, but none of the boxes on the grievance form are completed by officials at his prison. Specifically, the emergency review box for the Chief Administrative Officer was left blank, and the Counselor's response box was left blank. (Doc. 43-1 at 11).

The grievance is stamped as received by the ARB on June 3, 2019. (Doc. 43-1 at 11). On June 6, 2019, the ARB completed a return of grievance form that indicated "not

submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.  (Doc. 43-1 at 10).

Plaintiff's cumulative counseling summary does not reflect a grievance submitted on an emergency basis at Lawrence on or around May 23, 2019.  (Doc. 43-2 at 8).  There are also not any notes about grievances from March 18, 2019, thru May 23, 2019.  There is a notation that on May 21, 2019, Plaintiff was "seen at the cell during 30 day contacts and stated "I'm good thanks," no other concerns or issues advised to write a request slip if he needs anything."  (Doc. 43-2 at 8).

In addition to the May 23, 2019, grievance, Defendant Seed submitted grievance documentation from the ARB, along with an affidavit from a records custodian that the ARB documentation was comprehensive.  (Doc. 57-1 at 11-25; Doc. 57-1 at 10, Affidavit of Margaret Madole).  Per the ARB records, the only grievance appeal that the ARB received from Plaintiff in 2019 was the May 23, 2019, grievance, which was returned on June 6, 2019.  (Doc. 57-1 at 11).  Defendant Seed also submitted grievance logs and documentation from Lawrence, that purport to contain all grievances officially filed and processed at Lawrence by Plaintiff. (Doc. 57-2).  The documentation does not include any grievances lodged by Plaintiff in 2019 and officially cataloged by the institution.

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  In determining a summary judgment motion, the Court views the facts in the light most

favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and

at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

For an emergency grievance, an inmate may direct his request to the Chief Administrative officer, who will determine if the issue should be handled as an emergency. 20 ILL. ADMIN. CODE § 504.840(a)-(c). If the grievance is not deemed an emergency, the inmate must return to the normal grievance channels to resubmit the grievance as non-emergent. *Id*.

B. Analysis

The Court finds that the Motions for Summary Judgment can be resolved on paper without a *Pavey* hearing. The Defendants have submitted credible evidence in support of their contention that Plaintiff did not fully exhaust any grievance relevant to the claims presented in this case, and Plaintiff has not refuted that evidence.[2] Specifically, the May 23, 2019, grievance that Defendants submitted is clearly relevant in substance because it recounts many of the facts presented in the Amended Complaint. The grievance *could* perhaps serve to exhaust claims against all individuals mentioned in the grievance text—which included, Lewis, Conat, and Seed[3]. Reading the grievance liberally, Plaintiff also mentioned that "a lot of C/Os" showed up at his cell with Conat. The complaint identified the group of officers as Reid, Slover, Hanson, Eckelberry, Marshall, and Slunaker. Even if the Court read the grievance broadly to include all of these defendants, the grievance is still insufficient because it was not properly exhausted.

---

[2] Plaintiff was notified upon the filing of both motions of his opportunity to respond, and of the potential consequences of failing to respond. (Docs. 44, 58). Plaintiff never responded to either motion, though on March 24, 2023, the Court received a notice from Plaintiff that he had been moved to a new facility. (Doc. 59).

[3] Seed was the nurse that responded to Plaintiff's cell with his inhaler. She was initially a Jane Doe defendant, but Plaintiff followed the proper procedures in this case to identify Seed and to substitute her for the Jane Doe.

As the Defendants indicate, the grievance procedures require an inmate to submit a grievance within 60 days of the underlying incident. Here, the incident occurred on March 18, 2019, but Plaintiff did not file this emergency grievance until May 23, 2019. This is beyond 60 days, and thus is not in compliance with the grievance rules. Additionally, there are no markings on the grievance that indicate anyone at Lawrence ever received or processed the grievance. (Doc. 43-1 at 11-12). Plaintiff's cumulative counseling summary does not reflect the grievance (Doc. 43-2 at 8), and the Lawrence internal grievance logs do not reflect the grievance (Doc. 57-2). To the contrary, the cumulative counseling summary indicates that on May 21, 2019, Plaintiff was visited at his cell and reported that he had no concerns or issues to raise. (Doc. 43-2 at 8).

At most, the ARB records indicate that the ARB received the May 23 emergency grievance directly from Plaintiff on June 2, 2019. By June 6, 2019, the ARB rejected the grievance as outside the timeframe provided by Department Rule 504. (Doc. 43-1 at 10). Based on all of the available evidence, the May 23, 2019, grievance was not properly submitted at the institution, so it was not sufficient to exhaust administrative remedies as to the claims presented in this lawsuit. Plaintiff does not offer any arguments or evidence to contradict the Defendants' Motions. Having thoroughly reviewed the record evidence, the Court concludes that Plaintiff failed to exhaust his administrative remedies in this case, and he would no longer be able to do so because the time for exhaustion has long since expired.

DISPOSITION

The Motions for Summary Judgment on the issue of exhaustion (Docs. 42, 56) are **GRANTED**. All of Plaintiff's claims as identified by the Court from the Amended Complaint (Doc. 17) are **DISMISSED** without prejudice for his failure to exhaust administrative remedies.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). If Plaintiff chooses to appeal, he will be liable for the $505.00 filing fee irrespective of the outcome of the appeal. See Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may incur another "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. Fed. R. App. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Dated: June 29, 2023

_____
DAVID W. DUGAN
United States District Judge